| | | |
|---|---|---|
| JAMES T. RICHARDS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-13092-IT |
| | * | |
| MERRIAM WEBSTER, INC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 26, 2014

TALWANI, D.J.

I.      Introduction

James T. Richards ("Richards") filed suit against Merriam-Webster, Inc. ("Merriam-Webster") seeking a declaratory judgment that he may copy and use a substantial portion of the Merriam-Webster's Collegiate Dictionary, Eleventh Edition (the "Dictionary") without violating Merriam-Webster's copyright. Because the court finds that all material facts in this case are undisputed and concludes that Richards' proposed use of the material in question would violate Merriam-Webster's copyright, Merriam-Webster's Motion for Summary Judgment [#33] is ALLOWED.

II.     Background

In 2012, Richards undertook to develop a "textbook dictionary," aimed at improving the reading comprehension of its users. First Am. Compl. ¶ 23 [#17-1] [hereinafter Am. Compl.].

Richards began by converting an electronic copy[1] of the Dictionary into a set of Microsoft Word files. Id. ¶¶ 25-26. He then modified the dictionary entries by increasing the font size, underlining words for emphasis, increasing spacing between entries, redacting some etymological history, and inserting examples of how words might be used in sentences. Id. ¶¶ 28-29; see also Compl. Ex. C [#1-1]. Richards did not, however, make modifications to Merriam-Webster's definitions for each word. Compl. Exs. C-D (showing a side-by-side comparison of Richards' textbook and the Dictionary). In total, Richards copied approximately 70% (109,725) of the Dictionary's entries. Am. Compl. ¶ 28; Pl.'s Statement Disputed Material Facts Mot. Summ. J., 2 [#46] [hereinafter, Pl.'s Statement Disputed Facts].[2] The 30% of entries that Richards deleted were words that he believed to be rare or anachronistic and therefore less helpful to a textbook user. Am. Compl. ¶ 28.

In June 2013, Richards contacted Merriam-Webster requesting permission to use "virtually all the material" in its Dictionary for his planned textbook. Id. ¶ 30. Merriam-Webster responded via email, denying Richards' request. Id. ¶ 32. On February 4, 2013, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Richards filed his amended complaint before this court, seeking a declaration that publication of his textbook would not violate Merriam-Webster's copyright. Richards claims that (1) at least some portion of the Dictionary is comprised of definitions copied from earlier dictionary versions that have now entered the public domain, and (2) his proposed use of the Dictionary is permissible under the fair-use doctrine.

---

[1] Richards used Merriam-Webster's Collegiate Dictionary, Eleventh Edition, version 3.1 on CD-ROM. Pl.s' Statement Disputed Material Facts Mot. Summ. J., 4 [#46].

[2] Merriam-Webster initially charged Richards with using approximately 30% of the Dictionary's entries. Richards disputed this claim, explaining that he had in fact used nearly 70%. The parties now agree on this estimate.

III.    Discussion

Summary judgment is appropriate where "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Genereux v. Raytheon Co., 754 F.3d 51, 54 (1st Cir. 2014).

*A. Merriam-Webster's Copyright*

In support of its Motion for Summary Judgment, Merriam-Webster submitted a certificate of copyright for the Dictionary, dated July 9, 2004.  See Aff. Supp. Mot. Summ. J., Ex. B [#34-2].  This copyright certificate serves as prima facie evidence that Merriam-Webster holds a valid copyright over the Dictionary.  See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996) (citing 17 U.S.C. § 410(c)).  Therefore, Richards bears the burden of establishing a material dispute as to the copyright's validity.  See id.

Richards does not directly dispute the validity of Merriam-Webster's copyright.  Rather, he asserts that some portion of the Dictionary's definitions may have originated in an earlier dictionary version that has now entered the public domain.  Pl.'s Mem. Supp. Opp'n Mot. Summ. J., 3 [#46] [hereinafter, Pl.'s Opp. Summ. J.].  Even if Richards' claim is accepted as true, however, the fact that some dictionary entries have entered the public domain would not allow the court to grant Richards' requested remedy. [3]

To issue a declaratory judgment in this case, the court would have to find that Merriam-Webster has no claim of copyright infringement over any portion of the material Richards

_____

[3] Richards asserts that Merriam-Webster's answers to his interrogatories regarding which definitions are still under copyright were "unclear."  Pl.'s Statement Disputed Facts at 1.  Even if Richards or Merriam-Webster had identified which words are now in the public domain, however, the result in this case would be no different, given that Richards is seeking a declaratory judgment as to the use of the work as a whole.

proposes to use. Richards does not make such a claim, nor does he allege that Merriam-Webster's copyright certificate is invalid. Accordingly, his claim that some entries may have entered the public domain is an insufficient ground for a declaratory judgment of non-infringement of the work as a whole. [4]

*B. Fair Use*

The fair-use doctrine allows for the use of copyrighted material without permission of the copyright holder in limited circumstances. <u>See</u> 17 U.S.C. § 107. Four factors are relevant in determining whether a reproduction constitutes fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

<u>Id.</u> Because fair use is an affirmative defense, the burden of proof is borne by the putative infringer – in this case, Richards. <u>See</u> <u>Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory</u>, 689 F.3d 29, 59 (1st Cir. 2012) (citing <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 590 (1994)).

Three of the four fair-use factors strongly disfavor finding that Richards' proposed use of the Dictionary is permissible. Accordingly, the court first discusses these factors and then turns to an evaluation of the purpose and character of Richards' proposed use.

---

[4] Because this ruling is limited to the relief sought, the court's opinion does not expressly rule on the potential for Richards to utilize an older version of the dictionary, now within the public domain, to achieve his intended goal.

*1. Nature of the work*

The fair-use doctrine considers: "(1) whether the [work is] factual or creative, and (2) whether the [work has] previously been published." Gregory, 689 F.3d at 61 (citing Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 563 (1985); Núñez v. Caribbean Int'l News Corp., 235 F.3d 18, 24 (1st Cir. 2000)).

In assessing where a work falls on the spectrum from factual to creative, a dictionary may reasonably be understood as having a stronger informational or factual focus than a novel or poem. Cf. Núñez, 235 F.3d at 23 (explaining that even artistic endeavors like the taking of photographs may be considered largely non-creative if intended not for purposes of art, but for a commercial enterprise such as a modeling portfolio); Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 188 (D. Mass. 2007) (holding that photographs taken for a news story were factual). Nonetheless, Merriam-Webster asserts – and Richards does not contest – that its dictionary definitions represent Merriam Webster's "unique perspective[] and opinion[] as to what words mean." Def.'s Mem. Supp. Mot. Summ. J., 15 [#35]. The definitions chosen by Merriam-Webster are the result of a creative process that reflects the choices and opinions of the Dictionary's developers. Given the creativity inherent in developing and editing these dictionary entries, this factor disfavors a finding of fair use.[5]

*2. Extent of material used*

Richards admits to copying, largely verbatim, approximately 70% of the dictionary. The breadth of Richards' copying, amounting to more than 1000 dictionary entries and the majority

---

[5] This is true even though the Dictionary has previously been published. "[Prior publication] does not mean that this inquiry weighs in favor of fair use, only that [the works] do not fall into the category of private works to which the doctrine of fair use is especially unsuited." Fitzgerald, 491 F. Supp. 2d. at 187; see also Gregory, 689 F.3d at 62.

of the copyrighted work, strongly disfavors a finding of fair use. <u>Harper & Row</u>, 471 U.S. at 564-66 (finding that verbatim copying of 300 words was not fair use where those words were the "heart" of the work); <u>Sony Corp.</u>, 464 U.S. at 450 (noting that in an ordinary case copying a substantial portion of a work "militat[es] against a finding of fair use").

### 3. Market effect

An allegedly infringing work's effect on the original work's market is the "most important" of the four fair-use factors. <u>Harper & Row</u>, 471 U.S. at 566. The inquiry into market effect takes into consideration "both (1) the degree of market harm caused by the alleged infringer's actions, and (2) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original.'" <u>Gregory</u>, 689 F.3d at 64 (quoting <u>Campbell</u>, 510 U.S. at 590).

Merriam-Webster asserts that it derives income from advertising on the webpage of its online dictionary, and that the rate of such advertisements is based on the number of visits to the page. <u>See</u> Def.'s Stmt. Undisputed Material Facts ¶¶ 4, 9-11 [#36]. Merriam-Webster avers that, by providing access to nearly the entirety of its copyrighted work on an alternative site, Richards would clearly impede the market share and profitability of its online dictionary. <u>Id.</u> ¶¶ 11-12. Richards does not dispute Merriam-Webster's claim that the marketability of its dictionary would be greatly reduced if a free textbook version was available online; he argues only that this interest is outweighed by the benefits of increased reading comprehension among the American public.

In the absence of a dispute as to the textbook's effect on the Dictionary's marketability, this factor weighs strongly against fair use. This is particularly so because any negative market

effect would be further exacerbated if copying and distributing the Dictionary became an "unrestricted and widespread" practice. <u>Campbell</u>, 510 U.S. at 590.

### 4. Purpose and Character of Use

In considering the purpose and character of a reproduction's use, the fair-use doctrine pays particular attention to whether the work is "transformative" and whether its intended use is for profit. <u>Campbell</u>, 510 U.S. at 578-79; <u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 448-49 (1984) (finding that, although transformation is not a per se requirement for fair use, the more transformative a work is, the more likely the fair-use exception is to apply).

Richards does not contest that his textbook includes a significant portion of the Dictionary, copied verbatim. <u>See</u> Am. Compl. ¶¶ 28-29; Compl. Ex. C-D [#1-1]. He alleges, however, that the textbook is transformative insofar as changes in font size, formatting, the insertion of examples of words used in context, and the deletion of unnecessary words has changed "a reference book[] into a textbook." Pl.'s Opp'n Summ. J. at 7. The sum result of these changes, Richards asserts, makes his textbook significantly easier to use and converts the Dictionary from its original form into a reading comprehension tool. <u>Id.</u> at 7-8.

If Richards' explanation of the proposed textbook's intended use is fully credited, some level of transformation may perhaps have occurred. Richards has also disavowed any attempt to garner profits or reputational gain from the textbook's publication. He claims that the textbook will be distributed for free online as a public service. <u>Id.</u> at 9. Nonetheless, the final three factors of the fair-use test strongly disfavor Richard's claim. Therefore, even if the textbook could be considered transformative and Richards in fact would derive no profit from its distribution, this factor alone does not make Richards' proposed use permissible under the fair-use doctrine.

IV.     <u>Conclusion</u>

Richards has failed to establish the existence of a disputed material fact as to the validity of Merriam-Webster's copyright. Moreover, Richards' action in copying approximately 70% of the Dictionary's definitions is beyond the scope of the fair-use doctrine. Accordingly, Merriam-Webster's Motion for Summary Judgment [#33] is ALLOWED.


        IT IS SO ORDERED.

Date: September 26, 2014                              <u>/s/ Indira Talwani</u>
                                                     United States District Judge